1   **HARTMANN & KANANEN**
Ronald A. Hartmann, Esq., SBN 115683
2   constructiondefects@sbcglobal.net
Kurt E. Kananen, Esq., SBN 156136
3   kurtkananen@sbcglobal.net
Kenneth King, Esq., SBN 245961
4   kkinghk@sbcglobal.net
20750 Ventura Blvd., Ste. 101
5   Woodland Hills, CA 91364
Tel. (818) 710-0151; Fax (818) 710-0191
6
Attorneys for Plaintiff Shaya Baird,
7   individually and on behalf of a class of
similarly situated individuals
8
### UNITED STATES DISTRICT COURT
9
### CENTRAL DISTRICT OF CALIFORNIA
10
| | |
|---|---|
| SHAYA BAIRD, on behalf of herself and on behalf of all others similarly situated | **CASE NO. CV13-999 SVW (JPRX)** |
| Plaintiff, | [Hon. Stephen V. Wilson] [CLASS ACTION] |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION OF ISSUES;** |
| SABRE, INC; SABRE HOLDINGS CORP.; SABRE TRAVEL INFORMATION NETWORK, INC.; SABRE VIRTUALLY THERE; SABREMARK LIMITED PARTNERSHIP; and DOES 1 through 10, inclusive | DATE:     September 30, 2013 TIME:     1:30 pm CTRM:    6 |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

# **TABLE OF CONTENTS**

I.     INTRODUCTION……………………………....…………...1

II.    THE PROCEDURAL POSTURE OF THE LITIGATION………..1

III.   THE STATUS OF DISCOVERY…...……...………...……………1

IV.    SUMMARY OF DISCOVERY NEEDED TO OPPOSE THE MSJ …………………………………………………………....2

V.     PLAINTIFF IS ENTITLED TO COMPLETE DISCOVERY RELATED TO THE ISSUES RAISED IN THE MSJ ...………...3

VI.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF …………………………………………………5

VII.   THERE WAS NO PRIOR EXPRESS CONSENT…...…..…...…..7

       A.    Consent Must be Express, Knowing, Voluntary, Clear, Unequivocal………………………………………7

       B.    The Facts And Circumstances Of The Hawaiian Airlines Web Site Establish A Complete Lack of Prior Express Consent……………..………………………………10

       C.    At a Minimum, Material Questions Of Fact Exist ………...11

       D.    Defendants' Authorities Are Distinguishable And Inapplicable………………………………………...……12

VIII.  THE 9TH CIRCUIT HAS DETERMINED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER AN ATDS WAS USED……………….……….. 15

IX.    THE PURPOSE OF THE TCPA IS TO PROTECT THE PRIVACY INTERESTS OF INDIVIDUALS FROM UNSOLICITED TEXT MESSAGING …………………….....17

X.     DEFENDANTS  IGNORE THE STATUTORY CONSTRUCTION OF THE TCPA AS MODIFIED BY THE FCC …………………………………………………… 19

VI.    CONCLUSION……………………………....……………….20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 255 (1986)…………………………………………………..5

*Calderone v. United States*,
799 F. 2d 254, 259 (6th Cir 1986)……………………………………….6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)……………………………………………………….4

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 843 (1984) ……………………………………...……8, 19

*Connelly v Hilton Grand Vacations Co.,*
2012 U.S. Dist. LEXIS 81332, *11 (S.D. Cal. June 11, 2012) …………..8

*Burlington N. Santa Fe R.R. Co. v. The Assiniboine and*
*Souix Tribes of the Ft. Peck Reservation*,
323 F.3d 767, 773–74 (9th Cir.2003)…………………………………….4

*Buslepp v. Imrov Miami, Inc.,*
No. 12-60171-CIV, 2012 WL 4932692 (S.D. Fla. Oct, 16, 2012) ………20

*Gutierrez v. Barclays Group*,
No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546,
2011 WL 579238, at *2 (S.D. Cal. Fed. 9, 2011)………………….……...7

*In Re: Jiffy Lube International, Inc.*
847 F. Supp. 2d 1253 (S.D. Cal. 2012) ……………………………..…….12

*Leckler v. Cashcall, Inc.,*
554 F. Supp. 2d 1025 (N.D. Cal. 2008)……………………………....8, 9

*Mais v Gulf Coast Collection Bureau, Inc.,*
2013 U.S. Dist. LEXIS 65603 (S.D. Fla. May 8, 2013) …………….…..…9

*Metabolife Intn'l, Inc. v. Wornick*,
264 F.3d 832, 846 (9th Cir.2001)…………………………………………4

*National Steel Corp. v. Golden Eagle Ins. Co.*
121 F. 3d 496,502 (9th Cir. 1997)…………………………………….....6

*Nationwide Life Ins. Co. V. Bankers Leasing Ass'n, Inc.*
182 F.3d 157, 160 (2nd Cir. 1999)……...…………………………….7

*Pinkard v. Wal-Mart Stores, Inc.,*
2012 U.S. Dist. LEXIS 160938 (N.D. Ala 2012) …………………………14

**TABEL OF AUTHORITIES (continued)**

*Pollack v. Island Arbitration*,
869 N.Y.S. 2d 740 (2008) …………………………………………..20

*Roberts v. PayPal, Inc.*,
2013 U.S. Dist. Lexis 76319 (N.D. Cal. May 30, 2013) …….…..……12, 14

***R****yabyshchuk v. Citibank (South Dakota) N.A.*,
2011 U.S. Dist. LEXIS 136506 (S.D. Cal. Nov. 28, 2011)…………..7, 8, 9

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009)……….. 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

*Southern Calif. Gas Co. v. City of Santa Ana*,
336 F.3d 885, 888 (9th Cir. 2003) …………………………………..... 6

*United States v. Kitsap Physicians Serv.*,
314 F.3d 995, 1000 (9th Cir.2002)………………………………………...4

**STATUTES AND RULES**

FRCP Rule 12(b)(6)…………………………...………………… 1, 2

FRCP Rule 26(f) ………………………..……………………….. 2, 4

FRCP Rule 56(c)……………………………………………………….5

FRCP Rule 56(d)…………………………….……………...1, 2, 3, 4, 20

FRCP Rule 56(f) …………………………………………………...…4

Telephone Consumer Protection Act of 1991
(TCPA) ………………………….……1, 5, 7, 8, 12, 13, 14, 15, 17, 18, 19, 20

47 USC § 227……………………………………………………..….. 19

47 USC § 227(b)(1)(A)(iii) ……………………………………………..7

Cal. Civ. Code § 1670.5…………………………………………..…10

**OTHER AUTHORITIES**

***I****n The Matter Of Rules And Regs. Implementing The TCPA Of 1991*,
7 FCC Rcd. 8752, 8769 at ¶ 31 (Oct. 16, 1992)…………………………..7

**TABEL OF AUTHORITIES (continued)**

*In the Matter of Rules and Regulations Implementing The TCPA of 1991, Declaratory Ruling*, FCC 07-232, January 4, 2008 …………....……7, 9, 19

Black's Law Dictionary (9th Ed. 2009)……………………….......…8, 9, 10

S. Rep. No. 102-178, at 1 (1991),
reprinted in 1991 U.S.C.C.A.N 1968………………………………..17

PUBLIC LAW 102-243 [S. 1462], DECEMBER 20, 1991, TELEPHONE CONSUMER PROTECTION ACT OF 1991, 102 P.L. 243; 105 Stat. 2394; 1991 Enacted S. 1462; 102 Enacted S. 1462 …………………..…18

Congressional Record-House, Telephone Consumer Protection Act of 1991, Sec. 2 Findings No. 10 November 26, 1991………………….……18

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

For several reasons, the Motion should be denied or continued.

First, there has been no discovery conducted that is material to the opposition. Plaintiff has established the need for discovery, and deprivation of discovery would materially prejudice Plaintiff's ability to oppose the motion, and violate Rule 56(d).

Second, all of Defendants' evidence in support of their MSJ is objectionable for a number of reasons, and Defendants have not met their burdens.

Third, several material facts are disputed, and Defendants have not met their burden to establish prior express consent as a matter of law.

Fourth, disputed material facts exist as to whether or not the system was an Automated Telephone Dialing System ("ATDS") under the TCPA, and Defendants have not met their burden to establish that their system was an ATDS as a matter of law.

**II.     THE PROCEDURAL POSTURE OF THE LITIGATION**

Plaintiff filed the Complaint on Feb. 11, 2013.  Defendant filed two Rule 12(b)(6) Motions to Dismiss.  On Aug. 8, 2013, Plaintiff's filed a Second Am. Complaint.  After discussions between counsel, Plaintiff agreed to withdraw her Second Cause of Action (the state law unfair competition claim). Defendants answer to the Second Amended Complaint is due Sept. 13, 2013.  Defendants have continually refused to meet and confer regarding discovery until their MSJ is heard (Kananen Decl. ¶¶ 2-19).   On August 29, 2013, Defendants' filed a motion to stay discovery. (Kananen Decl. ¶ 28). That motion is pending.  The Initial Disclosures took place on Aug. 30, 2013.

**III.  THE STATUS OF DISCOVERY**

Throughout the ongoing and continual meet and confer process from the initial filing of this lawsuit through late August, 2013, counsel have agreed to hold off on discovery until all pleading issues were resolved and until Defendants prospective Motion for Summary Judgment/Adjudication ("MSJ") could be determined. (Kananen Decl. ¶¶ 2-19).  Based upon the ongoing discussions, the 12(b)(6) motions, defense

1

counsel's representation that the MSJ would be on pure legal issues, the parties agreed to hold off on discovery ( *Id at* ¶ 2-19). However, when Defendants finally filed their MSJ in August, 2013, it was readily evident that it did not involve pure legal issues, and discovery was needed to defect the MSJ.   Defendants refused to cooperate with discovery.   Plaintiff filed an ex parte application to continue the MSJ to allow for discovery.   The ex parte application was denied without prejudice to identify the discovery needed by declaration in her opposition to the MSJ according to the Rule 56(d).   On August 22, 2013, Plaintiff served discovery (document request and deposition notices of the witnesses that submitted testimony in support of the MSJ) (*Id at* ¶ 22).   Defendant refused to comply with discovery and filed an ex parte application for a protective order to stay discovery (*Id at* ¶¶ 20-23).   The Defendants' ex parte application is pending.

This litigation is in its infancy.   Defendant has yet to answer the complaint and no scheduling conference has been held. The initial disclosures were exchanged on August 30, 2013.   According to FRCP Rule 26(f), no party can even propound discovery unless and until the early meeting of counsel. Plaintiff has diligently prosecuted this litigation and would suffer irreparable harm if she was forced to oppose the MSJ without the opportunity to conduct any discovery. Thus, this Court is requested to extend the deadline for the filing of Plaintiff's opposition to the MSJ until January, 2014, so that the necessary discovery can be conducted.

All of the foregoing is set forth in the concurrently filed Declaration of Kurt Kananen, at ¶¶ 2 - 30.

## IV.  SUMMARY OF DISCOVERY NEEDED TO OPPOSE THE MSJ

Details of the discovery needed to oppose the MSJ is set forth in the concurrently filed Declaration of Ronald Hartmann, at ¶¶ 1 - 55.   The needed discovery may be summarized as follows:

The MSJ is predicated on two disputed assertions: (1) that Plaintiff had given her prior express consent to receive text solicitations; and (2) that Defendants did not use

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

an automatic telephone dialing system ("ATDS") (*Plaintiff's Statement of Genuine Disputes of Material Fact, Plaintiff's Response and Supporting Evidence to Defendants' Alleged Uncontroverted Material Facts*) (hereinafter "PRSS") (PRSS 2-12).   These two assertions implicate numerous disputed legal and factual issues, as set forth in these points and authorities and the supporting papers filed concurrently herewith (*Hartmann Dec.* ¶¶ 1- 55) (PRSS 2 - 12).

Regarding the issue of express consent, Plaintiff requires discovery including, at a minimum, the following, among other items: (1) the relationship between Defendants and Hawaiian Airlines ("HA") (the third party); (2) the relationship between Defendants and their agents Adeptra and mBlox; (3) how the air travel reservation booking process for HA operates, and how it obtains express consent; (4) depositions of witnesses in support of the MSJ *(Hartmann Dec.* ¶¶ 1- 55).

Regarding the issue of ATDS or not, Plaintiff requires discovery including, at a minimum, the following, among other items:  (1) the software/technology used by Defendants to send text messages (including inspection of such software by Plaintiff's expert); (2) manuals and technical information regarding the capacities of the software / technology used to send text messages; (3) the process by which the subject text message was sent; (4) the program flow and the information transmission of the text message; (5) the number of text messages sent by Defendants; and (6) depositions of witnesses in support of the MSJ *(Hartmann Dec.* ¶¶ 1- 55) (PRSS 5, 9).

## V.  PLAINTIFF IS ENTITLED TO COMPLETE DISCOVERY RELATED TO THE ISSUES RAISED IN THE MSJ

Pursuant to FRCP Rule 56(d), "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States*

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

*v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir.2002). A Rule 56(f) " 'continuance of a motion for summary judgment for purposes of conducting discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of evidence.' " *Burlington N. Santa Fe R.R. Co. v. The Assiniboine and Souix Tribes*, 323 F.3d 767, 773–74 (9th Cir.2003) (citation omitted). "Where ... no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Id.* at 774.

"Although Rule 56(f) [now Rule 56(d)] facially gives judges discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Intn'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir.2001) (citation omitted). This prevents the opposing party from being railroaded by a premature motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "A lesser showing of specificity may be allowed, as is the case here, before any discovery has taken place, because "the party making a Rule 56(f) [now Rule 56(d)] motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 774 (9th Cir. 2003).

In this case, Plaintiff has diligently litigated the case and there has been no undue delay. Without the aid of Defendants' initial disclosures and without a meaningful Rule 26 conference, Plaintiff could not have properly propounded meaningful discovery. Upon receipt of the MSJ, Plaintiff promptly served Defendants with discovery related to the issues raised in the motion (*Hartmann Decl.* ¶¶ 3-4) and (*Kananen Decl.* ¶¶ 9-30). Setting aside Defendants avowed refusal to respond to MSJ discovery, given the

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

briefing schedule presently set for the motion and the time frames provided by the Federal Rules, Plaintiff will not have the ability to review Defendants' responses to her Request for Production, her consultants will not have the opportunity to inspect Defendants' software system and Plaintiff will likely be precluded from deposing Defendants' declarants. Thus, Plaintiff will not have the discovery necessary to properly prepare an Opposition to the MSJ *(Hartmann Dec.* ¶¶ 1- 55)  (PRSS 5, 9).

The discovery propounded by Plaintiff seeks specific information which is relevant to the issues of: (1) whether Plaintiff consented to the receipt of text solicitations from Defendants; and (2) whether  the software/technology utilized by Defendants to disseminate text solicitations qualifies as a "ATDS" within the meaning of the Telephone Consumer Protection Act of 1991 ("TCPA") *(Hartmann Decl.* ¶ 10) (PRSS 2 - 12).  This discovery includes information regarding the software used by Defendant, the alleged consent given by the Plaintiff, and the relationship between Defendants and the third party to whom consent was purportedly "expressly provided" *(Hartmann Decl.* ¶¶ 1- 55).  Plaintiff believes that the information to be derived from this discovery will rebut Defendants' assertion that there is no genuine issue of material fact and thus will suffice to defeat the MSJ  *(Hartmann Decl.* ¶¶ 1- 55) (PRSS 5, 9).  In the interest of justice, this Court should continue the filing deadline for Plaintiff's opposition to permit Plaintiff sufficient time to conduct discovery.

## VI. DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF

Summary Judgment is a drastic remedy and is to be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuade the court that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56 (c). Because summary judgment is a "drastic device", the moving party bears a "heavy burden of demonstrating the absence of any triable issue of material fact. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.* 182 F.3D 157, 160 (2nd Cir. 1999). The Defendants' showing must

5

be sufficient for the court to hold that no reasonable trier of fact could find other than for the Defendants. *Calderone v. United States*, 799 F. 2d 254, 259 (6th Cir 1986).

Defendants have not met their burdens. This court must view Defendants' evidence through the prism of a substantive evidentiary burden. *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Defendants' evidence does not meet any level of evidentiary burden. Defendants incorrectly claim that Plaintiff must prove both that text message in this case was sent with the prior express consent of Plaintiff and without the use of an automatic telephone dialing system. First, this statement is an incorrect statement of the law. In this MSJ Defendants have both the burden of production and the burden of persuasion to show that: 1) plaintiff gave prior express consent to receive the text message; and 2) the text message was sent using an ATDS. The declarations submitted in support of the MSJ do not contain admissible evidence. Plaintiff has no initial burden of production of evidence unless and until Defendants meet their burden first.

The declarations submitted in support of the MSJ do not contain admissible evidence and are conclusory and lack the proper foundation. *See concurrently filed evidentiary objections.* For example, the Declaration of Avi Mannis contains an Exhibit "A" which purports to be a Contact Information sheet. However, at no time does Mannis state why the document purports to be what he says it is. There is absolutely no foundation for the authentication of this document. In fact as it turns out, the document is not what he claims it to be. *See Synder* Decl. ¶¶ 34, 36, 40, 57 Moreover, Declarants Russel, Guerts and Newhall state conclusions not based on evidentiary facts. *National Steel Corp. v. Golden Eagle Ins. Co.,* 121 F. 3d 496,502 (9th Cir. 1997) *See concurrently filed evidentiary objections.*

Even if the Court finds that Defendants have met their burden of production, Defendants have not met their burden of persuasion. Alleged undisputed fact numbers 1, 3, 4, 6, 7, 8, 10, 11, 12 are contradicted by Plaintiff's evidence, as set forth in Plaintiff's concurrently filed Response to  Separate Statement of Material Facts and

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

1  Supporting Evidence (PRSS 2-12) .

2  **VII.   THERE WAS NO PRIOR EXPRESS CONSENT**

3  **A.   Consent Must be Express, Knowing, Voluntary, Clear, Unequivocal**

4        Three citations govern the issue of prior express consent: The TCPA, the Ninth

5  Circuit's *Satterfield* decision, and the FCC's 1992 regulations.  Defendants agree that

6  the TCPA prohibits sending text messages without the called party's "prior express

7  consent".  The TCPA, 47 USC § 227(b)(1)(A)(iii) states, in part (emphasis added):

8        "It shall be unlawful for any person . . . to make any call (other than a call made
         for emergency purposes or with the ***prior express consent*** of the called party)
9        using any automatic telephone dialing system . . . to any telephone number
         assigned to a . . . cellular telephone service . . ."

10       Defendants only argue that the text message at issue was lawful because they

11  obtained Plaintiff's "prior express consent".  Prior express consent is a defense to a

12  TCPA claim[1], and Defendants have the burden to establish the defense.

13       The TCPA did not define "prior express consent". However, the 1992 FCC

14  regulations and *Satterfield* provide meaning to "prior express consent".  In 1992 the

15  FCC interpreted "prior express consent" as "persons who ***knowingly*** release their phone

16  numbers… ***absent instructions to the contrary*** ... " so long as the number provided is

17  the " one at which the [contacted] party ***wishes to be reached***."  *In The Matter Of Rules*

18  *And Regs. Implementing The TCPA Of 1991*, 7 FCC Rcd. 8752, 8769 at ¶ 31 (Oct. 16,

19  1992) (emphasis added) ("1992 TCPA Order").[2]

20       *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) established

21  the Ninth Circuit's definition of "prior express consent":  "[e]xpress consent is

22

23       [1]      See, e.g., *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 WL 5976239, at *5
24  (S.D. Cal. Nov. 28, 2011) ("The burden of establishing prior express consent is on the Defendant.");
     *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL
25  579238, at *2 (S.D. Cal. Feb. 9, 2011) (same).

26       [2]      In 2008, the FCC further interpreted "prior express consent" in the credit/debt context
27  to improperly allow for ***implied consent***, as well as express consent.  *FCC Declaratory Ruling*, 23
     F.C.C.R. 559, at ¶¶ 9 and 10 (released 1/4/2008) (2008 FCC Lexis 56) ("2008 TCPA Order"). The
28  2008 TCPA Order does not apply to the present action and has been rejected.

'[c]onsent that is ***clearly and unmistakably stated***." *Id.* at 955 quoting Black's Law Dictionary 323 (8th Ed. 2004) (emphasis added). *Accord*, *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 U.S. Dist. LEXIS 136506, *7 (S.D. Cal. 2011) (same).

In *Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008) (vacated on other grounds), the Court rejected the FCC's interpretation of "prior express consent". The Court found that plaintiff's act of providing her cell phone number on a loan application and later correspondence was merely impermissible ***implied consent***. *Leckler's* reasoning is on point (*Leckler,* 554 F.S.2d at 1029-1030) (emphasis added):

> The Court finds [the FCC's] construction of "prior express consent" both "manifestly contrary to the statute" and unreasonable, Chevron, 467 U.S at 844, because it ***impermissibly amends the TCPA to provide an exception for "prior express or implied consent***" and flies in the face of Congress' intent. [¶] Black's Law Dictionary defines "express consent" as "[t]hat directly given, either viva voce or in writing. It is positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning." Black's Law Dictionary 276 (5th ed.1979). Similarly, it defines "express" as "[c]lear. Definite. Explicit. . . . Declared in terms; set forth in words. . . . Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct." Id. at 521. By contrast, "implied consent" is defined as "[t]hat manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption that the consent has been given."Id. at 276. Although the Court does not doubt that by providing her cell phone number on her loan application and in subsequent correspondence plaintiff consented to be called by defendant, ***such consent was implied through her actions and conduct***, i.e. wilting [sic] down her cell phone number in a space labeled for such information, rather than expressly given in words or "direct and appropriate language" explicitly stating that plaintiff consented to be called with an autodialer or prerecorded message.

The *Satterfield / Leckler* analysis of express consent was adopted and approved in California in 2012 in *Connelly v Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *11 (S.D. Cal. June 11, 2012), where the court stated:

> Regarding the booking of reservations, Hilton has failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here. "Express consent is '[c]onsent that is clearly and un-mistakably stated.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)). Unlike the HHonors Program application, Hilton points to no evidence that in booking a hotel reservation Merritt agreed to Hilton's terms and conditions, including the possibility that contact information might be used to make special offers or promotions by telephone. Without more, the Court cannot conclude that one who provides a contact telephone number in booking a hotel reservation is "clearly and unmistakably" consenting to receive promotional calls. *Id.*

8

In *Mais v Gulf Coast Collection Bureau, Inc.*, 2013 U.S. Dist. LEXIS 65603 (S.D. Fla. May 8, 2013), the Court evaluated the phrase "prior express consent", adopted the *Satterfield* interpretation, and rejected the FCC's 2008 TCPA Order for the same reasons as *Leckler*, namely, the TCPA does not allow for ***implied consent***. *Mais* concluded that a signature on a credit application was merely ***implied consent***, that the plaintiff, by "writing down his number on the application", "has not directly, clearly, and unmistakably stated that the creditor may call him, and so he has not given 'express consent'". The reasoning of *Satterfield*, *Leckler*, *Ryabyshchuk*, and *Mais* are directly on point and lead to the inescapable conclusion in the present action that Plaintiff's mere act of inputting her phone number into HA website was implied consent, at best.

As noted in the above cited authorities, because "the phrase 'prior express consent' is unambiguous and consists of three words with discernable, ordinary meanings" (*Leckler, supra,* 554 F. Supp. 2d at 1029), courts that have thoroughly evaluated the meaning of the phrase have turned to Black's Law Dictionary. The essential definitions in Black's Law Dictionary have not materially changed since the *Leckler* decision in 2006, and leave no doubt that there was no prior express consent in this case, based upon the HA website:

**"Consent":** "1. Agreement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person; legally effective assent. Black's Law Dictionary (9th Ed. 2009), p. 346.

**"Express":** "Clearly and unmistakably communicated; directly stated." Black's Law Dictionary (9th Ed. 2009), p. 661.

**"Express Consent":** "Consent that is clearly and unmistakably stated. Black's Law Dictionary (9th Ed. 2009), page 346.

**"Implied Consent":** "Consent inferred from one's conduct rather than from one's direct expression." Black's Law Dictionary (9th Ed. 2009), page 346.

**"Voluntary Consent":** "Consent that is given freely and that has not been coerced." Black's Law Dictionary (9th Ed. 2009), page 346.

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

**"Knowing Consent":** "See informed consent."   "Informed Consent":   "A person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives."   Black's Law Dictionary (9th Ed. 2009), page 346.

**"Knowing":**   "1.   Having   or   showing   awareness   or   understanding: well-informed." "2. Deliberate; conscious."  Black's Law Dict. (9th Ed. 2009), p. 950.

**"Opt in":**  "1.  To choose to participate in (something)."  Black's Law Dictionary (9th Ed. 2009), page 1203.

At a minimum, applying common sense definitions as did *Satterfield*, questions of fact exist whether a customer using the HA website to make a reservation *"voluntarily"*, *"knowingly"*, *"expressly consented"* and *"Opted In"* to receive text messages by only providing a phone number without any text message disclosure and without an explicit statement that she *"wished to be reached"* at the inputted number. Providing a number was mandatory, and required by the TSA to prevent terrorism and assist with the accuracy of the no fly list. *Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 113-117.

**B.   The Facts And Circumstances Of The Hawaiian Airlines' Web Site Establish A Complete Lack of Prior Express Consent**

The facts and circumstances of Defendants' failed attempt obtain prior express consent differentiate this case from the authorities relied upon by Defendants.

Plaintiff has established that the consent, if any consent was obtained, was not prior express consent, but is, at best, implied consent, obtained via an ambiguous, unconscionable, contract of adhesion.  Courts may refuse to enforce such contracts. See, e.g., Cal. Civ. Code § 1670.5. The "consent" (if any) was not express, not clear, not voluntary, not knowing, not unmistakable, not unambiguous express consent to receive text messages (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 8, 20-26, 29-76, 108-118)( PRSS 2, 3, 4, 11, 12).

● Plaintiff did not voluntarily provide a phone number.  She was required to provide a number.  She had no choice (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 41, 61).

The website indicates that information was required by the U.S. Government (the TSA) in an effort to prevent terrorism (*Snyder Decl.*, ¶¶ 38, 63) (PRSS 2, 3, 4, 11, 12).

● Plaintiff was never informed that providing a cell phone number was consenting to receive text messages (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 41, 49, 78, 108-118)(PRSS 2, 3, 4, 11, 12).

● Plaintiff was never given the opportunity to negotiate, limit, modify or provide contrary instructions regarding consent (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 41, 49, 78, 113-116)(PRSS 2, 3, 4, 11, 12).

● Plaintiff did not expressly consent to receive text messages (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶ 8, 108 -118) (PRSS 2, 3, 4, 11, 12).

● Plaintiff's providing her cell phone number to the website was not knowing (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶108 -118) (PRSS 2, 3, 4, 11, 12).

● Plaintiff's consent, if any, was not express, voluntary, knowing, clearly stated, unmistakably stated, and unambiguous (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶108 -118) (PRSS 2, 3, 4, 11, 12).

● Plaintiff did not give consent to be called at the number that she provided (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶108 -118) (PRSS 2, 3, 4, 11, 12).

● Plaintiff's consent, if any, was obtained through subterfuge via a non-negotiable, unconscionable, contract of adhesion (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.*, ¶¶108 -118)(PRSS 2, 3, 4, 11, 12).

**C.    At a Minimum, Material Questions Of Fact Exist**

Plaintiff has established that her prior express consent, as defined by *Satterfield*, was not provided under the factual scenario presented by the website at issue (*Baird Decl.* at ¶¶ 5-24; *Snyder Decl.* at ¶¶ 8, 20-26, 29-76, 108-118) (PRSS 2, 3, 4, 11, 12).

In *Satterfield*, *supra*, 569 F.3d 946 (9th Cir. 2009) the plaintiff complained that she had received an unsolicited text message in violation of the TCPA. The plaintiff checked a box stating that she consented to Nextone or its affiliates providing promotional material over the cell phone. The checked box stated "Yes! I would like

11

to receive promotions from Nextones affiliates and brands."  The Court ruled that the particular defendant in *Satterfield* did not qualify as an affiliate or a brand of the party who received consent and therefore no express consent was provided for the text message at issue.  *Id.* at 955.  *Satterfield* holds that inputting a number by and of itself does not constitute "express consent" (i.e., consent that is "clearly and unmistakably stated") to receive text messages under the TCPA.  It would be an absurd result in the *Baird* matter if the check box in *Satterfield* provided more limited consent than baldly inputting a telephone number when required, but that is what the Sabre Defendants argue in their Motion.  A recent case, *In Re: Jiffy Lube International, Inc.*, 847 F. Supp. 2d 1253, 1259, footnote 7 (S.D. Cal. 2012), adopted the *Satterfield* reasoning in facts applicable to the present case:

> The court notes . . . it is not persuaded that a customer's provision of a telephone number on the invoice in question would constitute prior express consent. Heartland's citations to FCC documents are not particularly convincing, and it is doubtful that Plaintiffs' alleged consent was "clearly and unmistakably stated." Satterfield, 569 F.3d at 955.

**D.   Defendants' Authorities Are Distinguishable And Inapplicable**

*Satterfield* is the law in the Ninth Circuit.

The cases cited by Defendants for the proposition that simply providing a telephone number constitutes express consent are inapplicable to the facts of this case, and do not take precedent over *Satterfield*.  The facts here are materially distinct from the cases cited by Defendants.  Plaintiff did not provide her phone number along with an application or as part of a sign up form or a credit transaction.  Instead she was required to provide it when was purchasing an airline flight ((*Baird Decl.* at  ¶¶ 5-24).  The facts and circumstances of Plaintiff's transaction greatly differ from the Defendants' citations.

Defendants cite to *Roberts v. PayPal, Inc.*,  2013 U.S. Dist. Lexis 76319 (N.D. Cal. May 30, 2013) for the proposition that express consent is satisfied simply by entering a cell phone number into a form.  Defendants' analysis omits a critical fact in *Roberts* that renders the case inapplicable to the present matter. In *Roberts*, the plaintiff

12

admitted that he gave express consent to be called on his mobile phone.  Thus, the consent met the *Satterfield* requirements - it was knowing, voluntary, express, and on the number at which plaintiff wished to be reached.  The issue in *Roberts* was the ***scope*** of the express consent, and not the fact of the express consent. In the present case, there is no express consent from the outset, and *Roberts* does not apply (*Baird Decl.* at ¶¶ 5-24).  The *Roberts* Court stated (*Roberts,* 2013 U.S. Dist. Lexis 76319, at *13-14):

> "[T]he plaintiff in this case provided his cell phone number in order to receive information regarding PayPal's mobile services . . . , and then received a text message regarding PayPal's mobile services. Thus, even if the court were to narrowly construe the scope of plaintiff's "prior express consent," the text message at issue would fall within the scope of that consent. For these reasons, the court finds that plaintiff did give his prior express consent to receive the text message at issue, . . .

Because the fact of express consent was conceded and not at issue, *Roberts* did not decide the question whether or not plaintiff was bound by the PayPal user agreement which he never saw but which, *unlike the present case*, expressly informed PayPal customers that they may receive text messages.  On this point, the court stated: "the TCPA requires "prior express consent" to receive text messages, and the court is hesitant to find that plaintiff could have provided his consent through a revised user agreement of which he was never made aware".  *Roberts,* 2013 U.S. Dist. Lexis 76319, at *14-15. Thus, *Roberts* undercuts the Defendants' argument that the "privacy policy" on the HA website constitutes express consent.  The *Roberts* defendant argued that by making available a "user agreement" on the website the plaintiff provided express consent to text messaging.  In fact, the Roberts court stated that it was "hesitant to find that Plaintiff could have provided his consent through [an agreement] which he was never made aware" *Id.* at *5 (emphasis in original.)  In the present action, there is no express agreement (*Baird Decl.*, ¶¶ 5-24; *Snyder Decl.,* ¶¶ 8, 20-26, 29-76, 109-118)(PRSS 2, 3, 4, 11, 12).

Unlike *Roberts,* in the present action, the following elements of the FCC's 1992 TCPA Order and *Satterfield* are ***not present***:  "express consent"; "voluntary"; "knowing"; "wished to be reached"; and the opportunity to provide instructions to the

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

contrary(*Baird Decl.* at ¶¶ 5-24).  In addition, the HA website provides material warnings that make it objectively unreasonable to assume prior express consent as defined by *Satterfield* and the FCC was provided simply because a phone number was inputted.  The HA website implies the phone number is provided not to be called or texted, but instead is needed to help prevent terrorism and ensure the propriety of TSA no-fly lists (*Snyder Decl.,* ¶¶ 113-115).

Defendants' reliance on *Pinkard v. Wal-Mart Stores, Inc.,* 2012 U.S. Dist. LEXIS 160938 (N.D. Ala 2012) is misplaced.  In *Pinkard*, an Alabama case relied upon by *Roberts*, the court observed that plaintiff admitted that when she provided her number to the Wal-Mart pharmacy she was told that Wal-Mart needed the number "'in case there were any questions that came up.'" *Id.* at *5. Thus in *Pinkard*, as in *Roberts*, the plaintiff consented to use her mobile phone to communicate with the defendant. Both *Pinkard* and *Roberts* had no occasion to address whether the number was provided by a party who "wished to be reached" at the given number.  Furthermore, both *Pinkard* and *Roberts* did not address the question of the scope of the consent.

Here, the HA website has established the opposite, namely, that the telephone number was ***not*** voluntarily provided - it was provided because it was mandatory and it was needed to ensure the propriety of TSA no fly lists and aid in the prevention of terrorism, and ***not*** to receive phone calls or text messages (*Snyder Decl.,* ¶¶ 113-115). Thus, providing the personal information on the HA website is of an entirely different character than that provided by cases cited by Defendants and does not support the conclusion that merely providing the information amounts to per se consent as Defendants argue.

Defendants' claim that Plaintiff had access to the online privacy policy is misleading and ambiguous, as there are two privacy policies, neither of which mention "text messages", and the Plaintiff was never directed to read and agree to any privacy policy (*Baird Decl.* ¶ 21)(PRSS 2, 3, 4, 11, 12).  Similarly, Defendants' contention that if Plaintiff did not want to receive unsolicited text messages she should have filled in

14

0's to the phone number field, is equally absurd considering the multiple indications that this information is mandatory and is used to prevent terrorism and aid the TSA watchlist (*Snyder Decl*., ¶¶ 58 thru 66; *Mannis Decl*. ¶¶ 1, 2).  On the same website page that requires the telephone number, there is a notification that the form for purchasing the airline tickets is governed by the "Intelligence Reform and Terrorism Prevention Act of 2004." (*Snyder Decl*. at  ¶¶ 62-66; *Mannis Decl*. ¶¶ 1).

## VIII.   THE 9TH CIRCUIT HAS DETERMINED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER AN ATDS WAS USED

Defendants have the burden of persuasion to show that there exists no genuine of material fact regarding whether or not the software system at issue in this case sent an unwanted text message via an ATDS.[3] It is impossible for the Defendants to show that there is no issue of material fact regarding the ATDS ( *Snyder Decl*. at ¶ 8, 128 - 135) (PRSS 5-10). This case is a factual mirror image of *Satterfield v. Simon & Schuster, Inc. (2009) 569 F.3d 946 (hereinafter "Satterfield")*. In *Satterfield,* the Ninth Circuit reversed the District Court's ruling that the subject text message was not sent by a system amounting to an ATDS and therefore did not violate the TCPA.

In *Satterfield*, plaintiff received an unsolicited text message from defendants advertising a new book by Stephen King entitled "The Cell". To advertise the book, publisher Simon & Shuster hired the Mobile Information Access Corporation ("MIA") to provide a list of phone numbers in plain text or an Excel file to a company named ipsh! An ipsh! Programmer then imported the phone number into a data base located on an ipsh! server and the numbers were stored until they were to be "married" up with the advertising message and sent to the intended recipients.  Ipsh!'s computers were programmed to send the stored telephone numbers and text messages to mBlox. Mblox in turn transmited the text messages to the carriers and ultimately the intended

---

[3] Defendants also fail to meet their burden of production because, as is stated in the accompanying Evidentiary Objections there is no foundation for the respective declarants' conclusory opinions that an ATDS was not used.

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA
Case No. CV13-999 SVW (JPRX)**

1    recipient's respective phone.  Thereafter, plaintiff brought suit in the Northern District

2    Court of California alleging violation of the TCPA on behalf of her and the recipients.

3         The defendants moved for summary judgement on various theories including that

4    an ATDS was not used to send the unwanted text messages. The District Court granted

5    the motion on the basis that an ATDS was not in fact used. Plaintiff appealed and the

6    9th Circuit Court of Appeals reversed the trial court on the basis that the District Court

7    could not determine that there was no issue of material fact in dispute with respect to

8    the ATDS. In fact, the Court of appeal quoted the Declaration of expert Randy Snyder

9    submitted by the plaintiff in ruling that there was in fact a genuine issue of material fact

10   in dispute as to whether or not an ATDS was used to send the unwanted text message.

11        In this case there is no question that an ATDS was used to send the unwanted text

12   message to Plaintiff (*Snyder Decl.* ¶¶ 8, 132-135) (PRSS 5-10).  At the very least, there

13   is certainly a triable issue of fact as to whether or not the system by which Defendants

14   sent the unwanted text message amounted to an ATDS (*Snyder Decl.* ¶¶ 8, 132-

15   135)(PRSS 5-10).

16        Specifically,the cast of characters and facts in this case are nearly identical to

17   those in  *Satterfield*. Hawaiian Airlines outsourced its customer communications and

18   flight updates to Sabre Virtuallythere ("Sabre"). Sabre then contracted with Adeptra to

19   produce the marketing platform for the Hawaiian text messages. Adeptra's platform or

20   software sequenced and merged the template text message that Sabre wanted sent to

21   Hawaiian's customers with Hawaiian's customers' telephone numbers and then the

22   sequenced messages were sent to mBlox for storage and ultimately for deposit to the

23   end users via various wireless carriers (*Snyder Decl.* ¶¶ 85 - 107)(PRSS 5-10).

24        In both cases mblox served as the aggregator storing and sending text messages

25   to the wireless carriers via the providers' respective systems.  Like ipsh!, Adeptra

26   maintained, stored, and processed the cellular telephone numbers in sequential lists that

27   are then assembled, and merged these number with the message that was in fact stored

28   and sent out sequentially. This entire process is done via the Adeptra software and

16

1  platform without human intervention (*Snyder Decl.* ¶¶ 85 - 107)(PRSS 5-10).

2      In *Satterfield*, the Ninth Circuit reviewed the record and reversed the District
3  Court's decision that there was no triable issue of fact as to whether an ATDS was used.
4  Like in the *Satterfield* case, in this case Expert Snyder opined and concluded that the
5  system used by Sabre, Adeptra and mBlox amounted to a ATDS (*Snyder Decl.* ¶¶ 8, 85
6  - 107; 119-132)(PRSS 5-10).

7      In *Satterfield*, the District Court even quoted the Declaration of Randy Snyder
8  and specifically found that there was a triable issue of fact as to whether an ATDS was
9  used to transmit the unwanted text message. Moreover, the *Satterfield* Court pointed out
10 that Mr. Snyder had not opined as to the system's capacity to store or produce numbers.
11 Consequently, in this case there is a stronger question of material fact because Expert
12 Snyder did opine as to the capacity of the system to store and produce phone numbers
13 (*Snyder Decl.* ¶¶ 8, 85 - 107; 119-132)(PRSS 5-10). Clearly, there is a genuine issue
14 of material fact as to whether or not an ATDS was used to send the unwanted text
15 message to Plaintiff. To decide any other way would run afoul of the Ninth Circuit
16 Court of Appeals.

17 **IX. THE PURPOSE OF THE TCPA IS TO PROTECT THE PRIVACY**
18 **INTERESTS OF INDIVIDUALS FROM UNSOLICITED TEXT MESSAGING**

19     Defendants misstate the purpose of the TCPA in order to fit its strained
20 interpretation of the statute. Rather, the TCPA was enacted to broadly "protect the
21 privacy interests of residential telephone subscribers by placing restrictions on
22 unsolicitied, automated telephone calls to the home and to facilitate inter-state
23 commerce by restricting certain uses of facsimile machines and automatic dialers."
24 *Satterfield, supra*, at page 954, quoting S. Rep. No. 102-178, at 1 (1991), reprinted in
25 1991 U.S.C.C.A.N 1968. A review of the Legislative history and the TCPA reveals that
26 the purpose of the TCPA was much broader than asserted by Defendants.[4]

27 ───────────────
    [4] The phrase "creating phone numbers" does not appear in the TCPA or the legislative
28 history.

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA**
**Case No. CV13-999 SVW (JPRX)**

Without authority, Defendants state that if their ultra narrow interpretation of the TCPA is not accepted it would mean that "a personal computer with Microsoft Outlook is an ATDS since Microsoft Outlook can be programmed to send text messages to several recipients." See Opposition p. 15 lines 21-22. However, that is exactly what the Legislative History states and is exactly what the Legislature intended :

> "It should be noted that the bill's definition of an 'automatic telephone dialing system' is broad, not only including equipment which is designed or intended to be used to deliver automatically-dialed prerecorded messages, but also including equipment which has the 'capability' to be used in such manner. The Committee is aware of concerns that this broad definition could cover the mere ownership of office computers which are capable, perhaps when used in conjunction with other equipment, of delivering automated messages. Section 225(b)(2) , does not impose restrictions on the ownership of such equipment, but only its active 'use' to deliver automatically dialed prerecorded telephone solicitations without live operator intervention."

Committee Reports, Telephone Advertising Regulation Act, House of Representatives, Report 101-633, Section-By-Section Analysis, Section 2 Amendments To The Communication Act of 1934, Subsection Definitions (July 27, 1990) PP. 6-7 (Exhibit "9" to the Kananen Decl.)   Even the Congressional Record-House for the TCPA contradicts Defendants' strained interpretation of the purpose of the TCPA and do not mandate that the numbers be created by a random dialer. Instead, the Congress found automated systems objectionable: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Congressional Record-House, Telephone Consumer Protection Act of 1991, Sec. 2 Findings No. 10, November 26, 1991; PUBLIC LAW 102-243 [S. 1462], DECEMBER 20, 1991, TELEPHONE CONSUMER PROTECTION ACT OF 1991, 102 P.L. 243; 105 Stat. 2394; 1991 Enacted S. 1462; 102 Enacted S. 1462. (Exhibits 10 and 11 to the Kananen Decl.).   Defendants' interpretation of the TCPA is wrong. The purpose of the TCPA was to stop the invasion of privacy in telemarketing.

# X. DEFENDANTS  IGNORE THE STATUTORY CONSTRUCTION OF THE TCPA AS MODIFIED BY THE FCC

If this Court determines that the TCPA is "silent or ambiguous" on the definition

18

1  of the ATDS, the Court may defer to the statutory construction by the agency charged
2  with the implementation of the statute, in this case the FCC. *Chevron U.S.A. Inc. v.*
3  *Natural Res. Def. Council, Inc.,* 467 U.S. 837 843 (1984). Needless to say, information
4  technology has changed since 1991. By 2008 telemarketing by random telephone
5  number creators were a thing of the past. After the proliferation of the internet,
6  telemarketing relied on data lists instead of random telephone dialing.

7       In 2008, the FCC updated its rulings consistent with the technology of the times
8  and clarified the type of system that qualified as an ATDS in the post internet
9  telemarketing world. The FCC defined an ATDS to include equipment that dials
10 numbers from telephone lists, and clarified that a system need not randomly and
11 sequentially create telephone numbers to be an ATDS under the TCPA. The FCC based
12 its determination on the TCPA's legislative history and the current industry practice and
13 technology (*Snyder Decl.*¶¶ 78-84).  The FCC ruled that "...the evolution of the
14 teleservices industry had progressed to the point where dialing lists of numbers was far
15 more cost effective, but that the basic function of such dialing equipment, had not
16 changed-the capacity to dial numbers without human intervention." *In the Matter of*
17 *Rules and Regulations Implementing TCPA of 1991, Declaratory Ruling*, FCC 07-232,
18 January 4, 2008[5].  Instead of following this FCC Ruling, Defendants cite two
19 unpublished cases as a basis for a strained interpretation of the definition of an ATDS.
20 These cases are inapplicable in that they were decided on other grounds.[6] The FCC's

21      [5] It is anticipated that because the FCC Ruling related to Predictive Dialers, Defendants
22 might argue that this Ruling should be limited to Predictive Dialers. However, it would be
23 nonsensical for the FCC to rule on the definition of an ATDS as it relates to Predictive Dialers and
   not have it apply to all ATDS. Nothing in the FCC Ruling suggests that it should be limited to
24 predictive dialers.  See Declaration of Snyder Para. 83.

25      [6] *Pollack v. Island Arbitration* was a Small Claims action wherein the Court factually
   decided that an ATDS was not used because the in pro per plaintiff failed to submit any evidence
26 as how the text message was sent. Also, in *Buslepp v. Imrov Miami, Inc.*, No. 12-60171-CIV, 2012
   WL 4932692 (S.D. Fla. Oct, 16, 2012) decided on summary judgment the Court noted that the
27 plaintiff's statement of material facts was silent as the mode of delivery of the text message. In both
28 cases the plaintiff's did not know anything about the text messages or the methodology by which

19

2008 Ruling keeps up with changing technology while remaining consistent with the purposes of the TCPA, where telemarketers automatically dial individuals' phone numbers without their consent and without human intervention.

## XI. CONCLUSION

The MSJ involves disputed issues of fact and law.  It would be highly prejudicial and contrary to FRCP Rule 56(d) to require Plaintiff to respond to the MSJ without any opportunity to obtain the relevant and material discovery. Therefore, Plaintiff requests the Court to continue the deadline to file an Opposition to the MSJ and set a scheduling order that, at a minimum, dictates a discovery schedule and an equitable date for hearings on dispositive motions.

Many disputed issues of fact and law exist regarding whether or not the Defendants have obtained Plaintiff's prior express consent to receive text messages, and the MSJ should be denied on this ground.

Several disputed issues of act and law exist regarding whether or not the Defendants' system for sending text messages is an ATDS within the definition of an ATDS as set forth in the TCPA and the cases interpreting the TCPA.


Dated: Sept. 9, 2013          Respectfully submitted,

                              HARTMANN & KANANEN

                               /S/ Ronald A. Hartmann

                              _____
                              Ronald A. Hartmann
                              Attorneys for Plaintiff Shaya Baird

_____
they were sent.

**Plaintiff's Points and Authorities in Opposition to the Defendants' MSJ/MSA
Case No. CV13-999 SVW (JPRX)**