O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYA BAIRD,<br><br>    Plaintiff,<br><br>        v.<br><br>SABRE INC., et al.,<br><br>    Defendants. | CASE NO. CV 13-999 SVW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]<br><br>JS - 6 |

## I.    Introduction

Plaintiff Shaya Baird booked flights online for herself and her family on the Hawaiian Airlines website.  A section of the website entitled "Contact Information," provided spaces to enter a number for a mobile phone, home phone, or work phone, stating, "At least one phone number is required."  Baird entered her cellphone number.  Three weeks later, and about a month before her scheduled departure, defendant Sabre sent a text message to Baird's cellphone.  Sabre contracts with Hawaiian Airlines to provide traveler notification services to passengers.  The text message invited Baird to reply "yes" to receive flight notification services.  Baird did not respond and Sabre sent her no more messages.

Baird then brought this action, alleging that Sabre violated the Telephone

1  Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA") by sending her the
2  unsolicited text message.  She seeks to represent a class of people who received
3  similar text messages from Sabre.

4  The TCPA was enacted in 1991 in order to "'protect the privacy interests of
5  residential telephone subscribers by placing restrictions on unsolicited, automated
6  telephone calls . . . by restricting certain uses of facsimile machines and automatic
7  dialers.'"  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)
8  (quoting legislative history).  Among other things, the TCPA made it unlawful for
9  any person "to make any call (other than a call made for emergency purposes or
10 made with the prior express consent of the called party) using any automatic
11 telephone dialing system . . . to any [cellular] telephone number."  47 U.S.C.
12 § 227(b)(1)(A).  A text message is a call within the meaning of the act.  *Satterfield*,
13 569 F.3d at 952.

14 Sabre moves for summary judgment on the ground that Baird consented to
15 receive its text message when she made her flight reservation on the Hawaiian
16 Airlines website.  Baird's voluntary act of giving Hawaiian Airlines her cellphone
17 number allegedly constitutes the "express consent" required by the TCPA.  Baird
18 objects that she did not voluntarily provide her cellphone number.  Instead, the
19 Hawaiian Airlines website told her she had to provide a telephone number in order
20 to book her flight.  She was not informed or aware that Hawaiian Airlines would
21 consider her act of supplying her cellphone number to constitute consent to receive
22 text messages.[1]

23 **II.    Legal Standard**

24 Federal Rule of Civil Procedure 56 requires summary judgment for the

---

[1] Sabre also argues that the Hawaiian Airlines privacy policy, available through a link on its website, informed Baird that any personal information she provided might be shared with Hawaiian's vendors and contractors, and that in any event, the text message sent to Baird's cellphone was not produced by an "automatic telephone dialing system" within the meaning of the TCPA.  It is unnecessary to address these additional arguments since the consent defense is dispositive.

1  moving party when the evidence, viewed in the light most favorable to the
2  nonmoving party, shows that there is no genuine issue as to any material fact, and
3  that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.
4  56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).
5        The moving party bears the initial burden of establishing the absence of a
6  genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24
7  (1986). The moving party may satisfy this burden by "'showing'— that is,
8  pointing out to the district court — that there is an absence of evidence to support
9  the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party
10 has met its initial burden, the nonmoving party must go beyond the pleadings and
11 identify specific facts that show a genuine issue for trial. *See id.* at 323-24;
12 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A scintilla of evidence
13 or evidence that is merely colorable or not significantly probative does not present
14 a genuine issue of material fact. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th
15 Cir. 2000). Only genuine disputes over facts that might affect the outcome of the
16 suit under the governing law — *i.e.*, "where the evidence is such that a reasonable
17 jury could return a verdict for the nonmoving party"— will preclude entry of
18 summary judgment. *See Anderson*, 477 U.S. at 248.
19 **III. TCPA Claim**
20       Sabre's claim that Baird consented to receive the text message is an
21 affirmative defense to liability under the TCPA. *See Connelly v. Hilton Grant*
22 *Vacations Co.*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012). At trial, Sabre
23 would bear the burden of proof on this issue. To obtain summary judgment,
24 therefore, Sabre "must come forward with evidence which would entitle it to a
25 directed verdict if the evidence went uncontroverted at trial." *C.A.R.*
26 *Transportation Brokerage Co. v. Darden Restaurants*, 213 F.3d 474, 480 (9th Cir.
27 2000) (citation and internal quotation marks omitted). It is undisputed that Baird
28 provided her cellphone number under the heading "Contact Information" when she

booked her flight on the Hawaiian Airlines website. Sabre contends this is sufficient to establish that Baird consented as a matter of law.

Sabre argues that when someone gives a telephone number to a business, that act constitutes "prior express consent" within the meaning of the TCPA for the business to contact the person at that telephone number. Sabre bases this argument on Federal Communications Commission ("FCC") regulations, the legislative history of the TCPA, and numerous district court decisions. Baird argues that at most, the act of providing a telephone number on a form provided by a company during a business transaction conveys "implied consent" to be called, but not the "express consent" required by 47 U.S.C. § 227(b)(1)(A). Baird also argues that the issue of consent is a question of fact, not law, and points to evidence that a person booking a flight on the Hawaiian Airlines website cannot complete the transaction without providing a telephone number, and would not naturally assume that simply by doing so, she was expressing consent to be called at that number by an automatic telephone dialing system.

### A. Meaning of "Prior Express Consent" in the TCPA

In a 1992 rulemaking action implementing the TCPA, the FCC ruled that "persons who knowingly release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 ¶ 31 (1992) ("1992 FCC Order") (citing H.R. Rep. No. 102-317, at 13 (1991) ("[T]he called party has *in essence* requested the contact by providing the caller with their telephone number for use in normal business communications.")) (emphasis added). Myriad federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the act. *See, e.g., Emanuel v. Los Angeles Lakers*, 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013); *Roberts v. PayPal, Inc.*, 2013

1    WL 2384242, at *3-5 (N.D. Cal. May 30, 2013); *Ibey v. Taco Bell*, 2012 WL
2    2401972, at *3 (S.D. Cal. June 18, 2012); *Pinkard v. Wal-Mart Stores*, 2012 WL
3    5511039, at *4-5 (N.D. Ala. Nov. 9, 2012); *Gutierrez v. Barclays Group*, 2011 WL
4    579238, at *3 (S.D. Cal. Feb. 9, 2011).

5          Baird argues that the analysis of consent in the 1992 FCC Order reflects an
6    unreasonable interpretation of the plain language of the TCPA that the Ninth
7    Circuit has rejected.  *See Satterfield*, 569 F.3d at 955 ("Express consent is
8    '[c]onsent that is clearly and unmistakably stated.'") (quoting Black's Law
9    Dictionary 323 (8th ed. 2004)).  In *Satterfield*, however, the Ninth Circuit had no
10   occasion to consider the validity of the FCC's interpretation of "express consent."
11   Instead, the plaintiff in *Satterfield* had consented to receiving promotional
12   materials from a company (Nextones) and its affiliates and brands.  *Id.*  The
13   plaintiff's cellphone number was subsequently obtained by an unaffiliated entity,
14   the Simon & Schuster publishing company, which sent her a promotional text
15   message about a book having no relation to Nextones.  *Id.* at 949.  The Ninth
16   Circuit concluded that the plaintiff's "consent to receive promotional material by
17   Nextones and its affiliates and brands cannot be read as consenting to the receipt of
18   Simon & Schuster's promotional material."  *Id.* at 955.  While the court mentioned
19   the dictionary definition of "express consent" in support of its conclusion that a
20   person's consent to receive calls from one business does not constitute consent to
21   receive calls from a different business, the issue of whether the mere act of
22   providing a cellphone number constitutes "express consent" did not arise in
23   *Satterfield*.  *See id.* at 949 (plaintiff expressly consented to receiving text messages
24   from Nextones affiliates by affirmatively checking a box marked "Yes!" on a
25   form).  Therefore, *Satterfield* did not reject the FCC's determination that express
26   consent can be inferred from the consumer's act of providing a cellphone number.
27
28

**B.     Definition of "Prior Express Consent" in 2008 FCC Order**

Baird's critique of the FCC's interpretation of "prior express consent" invokes Judge Illston's reasoning in *Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008), *vacated by Leckler v. Cashcall, Inc.*, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ("*Leckler I*," and "*Leckler II*," respectively).  In *Leckler I*, Judge Illston addressed a claim under the TCPA based on a creditor's use of an autodialer to send prerecorded messages to a debtor's cellphone.  *See Leckler I*, 554 F. Supp. 2d at 1026-27.  Because the case involved debt collection calls, it was necessary to consider a 2008 FCC ruling addressing the meaning of "prior express consent" in that context.  *See id.* at 1028.  In that ruling, the FCC "clarif[ied] that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559  ¶ 1 (2007) ("2008 FCC Order"[2]) (quoting 47 U.S.C. § 227(b)(1)(A)).  Judge Illston then considered whether to defer to the FCC's interpretation under the principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  The 2008 FCC order reasoned that "the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  2008 FCC Order ¶ 9.  Judge Illston found this construction of the TCPA "both 'manifestly contrary to the statute' and unreasonable, because it impermissibly amends the TCPA to provide an exception for 'prior express *or implied* consent' and flies in the face of Congress' intent." *Leckler I*, 554 F. Supp. 2d at 1029-30 (quoting *Chevron*, 467 U.S. at 844) (citation omitted, emphasis

---

[2]  The Court follows the parties' practice of calling this the "2008 FCC Order" because it was released on January 4, 2008, after being adopted by the FCC on December 28, 2007.

original). *Leckler I* carefully explained the difference between implied and express consent and argued that the 2008 FCC Order elides that distinction, contrary to the text and purpose of the TCPA. *See id.* at 1029-33.

In *Leckler II*, however, Judge Illston vacated her prior opinion because she concluded she lacked authority to question the validity of the FCC's rulemaking. *See Leckler II*, 2008 WL 5000528, at *2-3. Under the Administrative Orders Review Act (also known as the "Hobbs Act"[3]), the federal courts of appeals have exclusive jurisdiction to determine the validity of final FCC orders. 28 U.S.C. § 2342(1); *Pacific Bell v. Pac West Telecom*, 325 F.3d 1114, 1125 (9th Cir. 2003). Because the FCC made a final determination of the meaning of the term "prior express consent" in the TCPA when the called party has provided the cellphone number "to a creditor in connection with an existing debt," the court in *Leckler* lacked the authority to depart from the FCC's interpretation. *See Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 461-64 (11th Cir. 2012); *CE Design, Ltd. v. Prism Business Media*, 606 F.3d 443, 446-50 (7th Cir. 2010). Moreover, even if the Ninth Circuit's reference in *Satterfield* to the dictionary definition of "express consent" was intended to express disagreement with the FCC's interpretation, the Ninth Circuit had no power to reject the FCC rule in the course of an appeal from a judgment denying a TCPA claim. *See U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000). Under the Hobbs Act, the exclusive jurisdiction of the courts of appeals to review the validity of FCC rulings may be invoked "only by filing a petition for review of the FCC's final order in a court of appeals naming the United States as a party." *Id.* (citation and internal quotation marks omitted); 28 U.S.C. § 2344.

---

[3] The Administrative Orders Review Act of 1950, 28 U.S.C. § 2342, is different from the 1946 "Hobbs Act" that criminalized robbery and extortion affecting commerce, 18 U.S.C. § 1951. *See United States v. Enmons*, 410 U.S. 396, 401-408 (1973) (criminal law Hobbs Act); *Simmons v. I.C.C.*, 716 F.2d 40, 42 (D.C. Cir. 1983) (administrative law Hobbs Act).

*Leckler* involved a creditor's calls to a debtor, so the 2008 FCC Order was determinative. But in this case, Baird did not provide her cellphone number to Sabre in connection with a debt. Therefore, the 2008 FCC Order does not resolve this case. Instead, the question here is whether the earlier 1992 FCC Order defined "prior express consent" so that the mere act of providing a cellphone number to a business in connection with a transaction constitutes the consent required under the TCPA to receive autodialed calls.

At first glance, it would seem that the 1992 FCC Order must not have settled this question, for otherwise credit and collection companies would not have petitioned the FCC in 2005 seeking clarification that the TCPA's prohibition against autodialed calls does not apply to creditors making calls to cellphones to recover debts. *See* 2008 FCC Order ¶ 8 & n.1 (explaining background of its ruling). But the story is not so simple. In 2003, the FCC had issued an order that revised several TCPA rules and regulations and established the national "do-not-call" registry. *See In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014 (2003) ("2003 FCC Order"). In that order, the FCC affirmed that "under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." *Id.* ¶ 165 (emphasis original). It appears that this sweeping language, in combination with other statements about the nuisance created by automated calls and the fact that cellphone users are charged for incoming calls, inspired the credit and collection companies to seek clarification of the 2003 FCC order. *See* 2008 FCC Order ¶¶ 7-8.

C. **Definition of "Prior Express Consent" in 1992 FCC Order**

The 1992 FCC Order stated that "[i]f a call is otherwise subject to the prohibitions [against using an autodialer, and other rules targeting telemarketing], persons who knowingly release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given, absent

instructions to the contrary." 1992 FCC Order ¶ 31 (emphasis added). In support of this view, the FCC cited a House of Representatives report on the TCPA stating that when people provide their telephone numbers, "the called party has *in essence* requested the contact by providing the caller with their telephone number for use in normal business communications." *Id.* ¶ 31 n.57 (emphasis added). For the reasons explained by Judge Illston in *Leckler I*, this analysis drains the term "express" in the TCPA of its meaning. *See Leckler I*, 554 F. Supp. 2d at 1030-33. Despite the weakness in this reasoning, however, the FCC appears to have intended its 1992 Order to provide a definition of "prior express consent" in the TCPA. *See* 1992 FCC Order ¶ 7 ("Definitions of the terms 'prior express consent' and 'established business relationship' are set forth at paras. 29–35, infra.")

Paragraphs 29 and 30 of the 1992 FCC Order summarize the views of commentators. Paragraphs 32-35 address the term "business relationship." The "definition" of "prior express consent" must therefore be contained in Paragraph 31, which states, in its entirety:

> 31. We emphasize that under the prohibitions set forth in [47 U.S.C.] § 227(b)(1) and in [47 C.F.R.]§§ 64.1200(a)-(d) of our rules, only calls placed by automatic telephone dialing systems or using an artificial or prerecorded voice are prohibited. If a call is otherwise subject to the prohibitions of § 64.1200, persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached. However, if a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. Therefore, calls may be placed to "captured" numbers only if such calls fall under the existing exemptions to the restrictions on autodialer and prerecorded message calls.

2008 FCC Order ¶ 31 (footnote citing H.R. Rep. No. 102-317 omitted). In contrast to the 2008 FCC Order unambiguously stating that calls made to cellphone numbers provided in connection with an existing debt "are permissible as calls

made with the 'prior express consent' of the called party," Paragraph 31 of the 1992 FCC Order is not a model of clarity. *Cf.* 2008 FCC Order ¶ 1. The statement that "telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached" begs the question of whether merely providing a cellphone number demonstrates that the number is "one at which the called party wishes to be reached" by an automated dialing machine delivering a prerecorded message, instead of a number at which the called party wishes to be reached by a human being. *See Leckler I*, 554 F. Supp. 2d at 1030.

Nevertheless, Paragraph 7 of the 1992 FCC Order shows that the FCC intended to provide a definition of the term "prior express consent." That definition must govern this Court's analysis of whether Baird can prevail on her claim that Sabre's text message to her cellphone violated the TCPA. *See* 28 U.S.C. § 2342(1); *U.S. West*, 224 F.3d at 1053-55 (deferring to FCC's interpretation of Telecommunications Act of 1996 despite "serious doubts about the FCC's analysis"). Under the FCC's definition, it is undisputed that Baird "knowingly release[d]" her cellphone number to Hawaiian Airlines when she booked her tickets, and by doing so gave permission to be called at that number by an automated dialing machine. *See* 1992 FCC Order ¶¶ 7, 31.

**D.     Baird Consented to Receive the Text Message from Sabre.**

Although Sabre is a different company from Hawaiian Airlines, there is no genuine factual dispute over the fact that Hawaiian Airlines contracted with Sabre to provide flight notification services to its passengers. (Dkt. 29-4: Newell Decl. ¶ 4.)[4] Nor is there a genuine factual dispute that the single message sent to Baird invited her to sign up to receive messages related to her upcoming flight on

---

[4] Plaintiff's objections to Mr. Newell's declaration (Dkt. 37-7) are overruled. Mr. Newell is a Sabre employee who is competent to testify about the services Sabre renders on behalf of Hawaiian Airlines.

1    Hawaiian Airlines.  (Id. ¶¶ 5-6.)  Thus, this case is unlike *Satterfield*, in which the
2    plaintiff consented to receive messages from a business and its affiliates, but not
3    from wholly unrelated enterprises.  *Cf. Satterfield*, 569 F.3d at 955 ("[T]he record
4    shows no direct contractual relationship between Nextones and Simon &
5    Schuster.").  No reasonable consumer could believe that consenting to be contacted
6    by an airline company about a scheduled flight requires that all communications be
7    made by direct employees of the airline, but never by any contractors performing
8    services for the airline.  Indeed, Baird does not make this argument.  Instead, her
9    argument is that she felt compelled to provide a telephone number to complete her
10   reservation, and did not consent to receive text messages on that number.  (Dkt 37-
11   4: Baird Decl. ¶¶ 7-10, 14-15.)  Nevertheless, Baird's act of providing her
12   cellphone number was a voluntary act; she was not forced to book a flight on
13   Hawaiian Airlines.  *Cf. Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d.
14   464, 465-67 (E.D.N.Y. 2012) (where PACER system required plaintiff to provide a
15   contact telephone number to obtain an account, plaintiff's act was still voluntary
16   and constituted express consent to be contacted).

17   Defendant's evidence establishes that Baird provided her cellphone number
18   to Hawaiian Airlines voluntarily.  Under the FCC's interpretation of the TCPA,
19   Baird consented to be contacted on her cellphone about flight-related matters.
20   Hawaiian Airlines then used its vendor Sabre to offer to provide Baird with flight
21   information on her cellphone.  The single text message sent to Baird's cellphone
22   fell within the scope of her "prior express consent."  Defendant is therefore entitled
23   to summary judgment on the TCPA claim.

24   **IV.   California Unfair Competition Claim**
25   Plaintiff's claim under California Business and Professions Code § 17200 is
26   based on the alleged violation of the federal TCPA and Business and Professions
27   Code § 17538.41.  To the extent that this claim is based on the TCPA, it fails for
28   the reasons explained above.  Sabre argues that the text message did not violate

§ 17538.41 both because it was not an "advertisement" (since although it promoted a service, that service was not offered for sale) and because the text itself provided the option of receiving no further messages. *See* § 17538.41(a)(1) & (b). Baird has failed to respond to this argument. Sabre is entitled to summary judgment on this claim.

## V.   Order

    1. Judgment is entered in favor of defendant Sabre on all claims in plaintiff's Second Amended Complaint.

    2. The Second Amended Complaint is dismissed with prejudice.

    3. As the prevailing party, defendant Sabre is awarded costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54-2.

**IT IS SO ORDERED.**

Dated: January 28, 2014

STEPHEN V. WILSON
United States District Judge